JONATHAN E. NUECHTERLEIN
General Counsel
CHARLES A. HARWOOD
Regional Director
ELEANOR DURHAM, MD Bar
Email: edurham@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896, Seattle, WA 98174
(206) 220-4476 (Durham)/(206) 220-6366 (fax)
STACY PROCTER CA Bar # 221078
Email: sprocter@ftc.gov
10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024
(310) 824-4343 (Procter)/(310) 824-4330 (fax)

FILED
CLERK, U.S. DISTRICT COURT

2/16/16

CENTRAL DISTRICT OF CALIFORNIA
BY: CS          DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** )<br><br>Plaintiff, )<br><br>vs. )<br><br>**GOOD EBUSINESS, LLC, also d/b/a AAP FIRM, STUDENT LOAN HELP DIRECT, SELECT STUDENT LOAN HELP, SELECT STUDENT LOAN HELP, LLC; SELECT DOCUMENT PREPARATION, INC.; TOBIAS WEST aka Tobey West, Toby West, and Eric West; and KOMAL WEST**, )<br><br>Defendants. ) | Civ. No. CV16-1048-ODW (JPRx)<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>**FILED UNDER SEAL** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act") 15 U.S.C. § 6101 *et seq*., and the 2009 Omnibus Appropriations Act, Pub. L. No. 111-8, § 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("2009 Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, § 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010, Pub. L. No. 111-203, § 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, and to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, or the Mortgage Assistance Relief Services Rule, recodified as Regulation O ("MARS Rule/Reg. O"), 12 C.F.R. Part 1015, in connection with the marketing and sale of student loan debt relief services and mortgage assistance relief services.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b); and Section 626 of the 2009 Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c) and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. § 6101, et seq.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing acts or practices.  Additionally, the FTC enforces, pursuant to 12 U.S.C. § 5538, Regulation O, formerly known as the MARS Rule, which requires mortgage assistance relief service ("MARS") providers to make certain disclosures, prohibits certain representations, and generally prohibits the collection of an advance fee for such services.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the TSR, and the MARS Rule/Reg. O, to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 6102(c), and 6105(b); § 626, 123 Stat. at 678, as clarified by § 511, 123 Stat. at 1763-64, and amended by § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538.

## DEFENDANTS

6.     Defendant Good EBusiness, LLC, ("GEB"), is a Nevada limited liability corporation created on or about June 11, 2013.   Its business offices are located at 3530 Wilshire Blvd., Suite 690, Los Angeles, California 90036.  GEB has also done business as The AAP Firm ("AAP"), Student Loan Help Direct ("SLHD"), and Select Student Loan ("SSL").  At all times material to this Complaint, acting alone or in concert with others, GEB has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

7.     Defendant Select Student Loan Help, LLC ("SSLH"), is a Florida limited liability corporation created on or about August 19, 2014.  Its offices are located at 3530 Wilshire Blvd., Ste. 690, Los Angeles, California 90036.  SSLH was incorporated by two employees of GEB, but Tobias and Komal West assumed

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

management of the company the following month.  At all times material to this Complaint, acting alone or in concert with others, SSLH has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

8.     Defendant Select Document Preparation, Inc. ("SDP") is a Nevada corporation, incorporated on or about February 17, 2015.  Its offices are located at 3530 Wilshire Blvd., Ste. 690, Los Angeles, California 90036.  At all times material to this Complaint, acting alone or in concert with others, SDP has engaged in the acts and practices set forth in this Complaint, in this district and throughout the United States.

9.     Defendant Tobias West aka Tobey West, Toby West, and Eric West ("Tobias West"), is the sole owner and managing member of GEB.  He co-owns SSLH with his wife, Defendant Komal West.  Tobias West is a managing member of SSLH and a director of SDP.  Tobias West is a signatory on bank accounts and merchant accounts for GEB and SSLH (sometimes as Eric West) and paid for the domain registrations for websites established for GEB, SSLH, and SDP.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the practices of GEB, SSLH, and SDP, including the acts and practices set forth in this Complaint, in this district and throughout the United States.

10.    Defendant Komal West is designated as the Chief Operating Officer of GEB dba SSL on the related Fictitious Business Name Statement.  She co-owns SSLH with her husband, Tobias West, and is the majority owner and an officer of SDP.  Komal West is a signatory on the bank account for SSLH and the merchant account for SDP.  At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the practices of GEB, SSLH and SDP, including the acts and practices set forth in this Complaint, in this district and throughout the United

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

States.

## COMMERCE

11.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## GOVERNMENT MORTGAGE ASSISTANCE

12.     The federal government's "Making Home Affordable" program is a plan to stabilize the U.S. housing market and help financially distressed consumers reduce their monthly mortgage payments to more affordable levels.  The Making Home Affordable program includes the Home Affordable Modification Program ("HAMP"), in which the federal government has committed up to $75 billion to keep consumers in their homes by preventing foreclosures.  Defendants are not connected with the Making Home Affordable program nor is their MARS program otherwise associated with, or endorsed, sponsored, or approved by, the United States government in any way. The HAMP program is available to eligible borrowers at no cost.

## MORTGAGE ASSISTANCE RELIEF SERVICES

13.     From at least January 2014 to August 2014, GEB d/b/a AAP, and Tobias West ("MARS Defendants") engaged in a course of conduct to market and sell MARS, including home loan modification services.

14.     MARS Defendants marketed their services primarily via unsolicited outbound telemarketing calls and inbound telemarketing calls from consumers responding to online advertising at their website, www.american-apc.com, and direct mail advertising touting foreclosure avoidance.

15.     Many of the MARS Defendants' customers were financially distressed homeowners. MARS Defendants promised consumers that they would lower the consumer's monthly mortgage payment, mortgage interest rate, or obtain loan forbearance, a loan modification, or other loan restructuring.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

16.   MARS Defendants purported to be a law firm and to provide consumers with legal representation through a network of affiliated legal service providers. MARS Defendants claimed they would provide forensic loan audits and other services that would identify errors in consumers' mortgage loan documents, ferret out predatory lending practices, gather information that they would purportedly use to defend against foreclosure, and win concessions from lenders.

17.   MARS Defendants charged an initial up-front fee, ranging from $1000 to $5000.  MARS Defendants represented that, if they were unable to secure the promised MARS, they would fully refund all fees paid by the consumers.

18.   In numerous instances, MARS Defendants failed to obtain the promised relief for their customers and have not provided the promised refund.

**The MARS Sales Pitch**

19.   MARS Defendants initiated contact with consumers through unsolicited outbound telemarketing calls and inbound telephone calls from consumers responding to claims on their website touting foreclosure avoidance.  The website did not include any of the disclosures required by the MARS Rule/Reg. O.

20.   MARS Defendants' website claimed the following:

**DEFENDING AMERICAN HOMEOWNERS**

The AAP Firm & Associates is in the business of helping people that are trapped in their mortgages to continue to live the American Dream of home ownership.

We are a diverse team of experts and attorneys with experience in loan modification, loss mitigation, real estate, and mortgage lending. Members of our staff have experience working within loss mitigation departments of major U.S. lenders and services.  We have helped homeowners across the country secure a loan modification, which enabled them to stay in their homes.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

The AAP Firm & Associates provides you with the evidence and support you can trust to help you seek better modification terms, restructuring of new terms, principal or rate reduction, or continued discovery (sic). With the greatest potential to alleviate "normal modification" setbacks and re-occurrence of default, qualified and objective evidence helps simplify negotiations and stay using the information and support provided by National Forensic Loan Auditors.

21.     In numerous instances, MARS Defendants told consumers during telephone sales presentations that they could secure for them a loan modification through a government-sponsored program, or otherwise obtain a loan modification that would lower consumers' monthly mortgage payment and reduce their mortgage interest rate, and that in most cases MARS Defendants would complete the process within three to four months.

22.     In numerous instances, MARS Defendants quoted a specific dollar amount by which they would reduce consumers' monthly mortgage payment, or promised a mortgage interest rate substantially lower than the rate the consumer was currently paying. In some instances, MARS Defendants represented to consumers that they had a working relationship with the consumer's lender.

23.     In numerous instances, MARS Defendants told consumers, many of whom were current on their mortgage payments, that in order to obtain the promised MARS, consumers should stop making mortgage payments to their lenders. MARS Defendants also instructed consumers not to communicate with their lenders during the loan restructure process.

COMPLAINT                              7                    Federal Trade Commission
                                                             915 2nd Ave., Ste. 2896
                                                          Seattle, Washington 98174
                                                               (206) 220-6350

24.     In numerous instances, MARS Defendants told consumers that, if they were unable to obtain the promised loan modification, they would fully refund the fee the consumer paid.

### Payment Structure and Enrollment for MARS

25.     Prior to receiving payment from consumers, MARS Defendants sent consumers a packet of written materials via email, fax, or in some instances, regular mail. The written materials did not include the disclosures required by the MARS Rule/Reg. O.  Consumers were told they must complete the forms in the packet and return the completed forms with the requested financial documents and the agreed upon fee.  The materials included:  (1) "Clients Rights and Responsibilities," advising the consumer to forward all correspondence from the lender to MARS Defendants and stating that the process, in most instances, is completed within 90 days after it is assigned to a negotiator; and (2) the "Client Retention Agreement," which stated as follows:

> This is a written agreement ("Agreement") that California law requires attorneys to have with their clients.  The offices of AAP Firm & Associates, a Professional Corporation ("AAPC"), (Hereinafter referred to as "Attorney" and/or "Firm" will provide services to [name of consumer] ("Client") set forth below: (sic)

> The Firm's responsibility shall be to vigorously protect your property, to resolve the dispute you have with your financial lender, to conduct a loan compliance audit for you as you have directed or will direct against various financial institutions for violating their legal obligations toward you that you represent is evidenced by documents in your files justifying legal action.

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

Scope of Representation – Such representation to resolve your case shall be limited to the following:

I.     Review your loan docs to ensure they comply with all Federal Laws and Regulations.

II.    Force the lender to adjust the current terms, eliminate or reduce any delinquent or missed payments.

III.   Reduction of current loan balance, reduced rate.

IV.    Loan to be converted to a longer term. Fixed Rate.

V.     Reduction of any current or future interest rate changes.

VI.    Update status with credit agencies.

VII.   Negotiate short sale when necessary.

VIII.  Negotiate Deed in Lieu when necessary.

26.    MARS Defendants required and accepted payment of fees ranging between $1000 and $5000 prior to the consumer executing a written agreement with the lender or servicer that incorporated an offer for loan modification.  Often, MARS Defendants permitted consumers to split the advance payment by sending two or more checks.  In some instances, MARS Defendants told consumers that the fee covered the cost of modifying the mortgage or securing a loan restructure.

**Consumers' Post-Enrollment Experience with MARS Defendants**

27.    In numerous instances, MARS Defendants remained in contact with the consumer only until the final payment check had cleared the bank. Thereafter, in numerous instances, when consumers attempted to contact MARS Defendants for status updates, they often failed to answer or return consumers' telephone calls or emails.  When consumers were able to make contact, in numerous instances MARS Defendants strung consumers along, telling consumers that they were working on the consumer's loan and that things were going well.

COMPLAINT                                    **9**                        Federal Trade Commission
                                                                         915 2nd Ave., Ste. 2896
                                                                         Seattle, Washington 98174
                                                                         (206) 220-6350

28.     In late 2014, MARS Defendants told consumers who tried to contact them that they had sold or transferred the consumer's file to another firm and that they would no longer be dealing with the loan file or that they had done enough work and would not be providing further services.  When consumers attempted to contact the new firm, they could not reach anyone, or if they did reach someone, the person could not help them.

29.     After consumers had paid the requested advance fees, in numerous instances, MARS Defendants failed to obtain the promised relief.  In many instances, when consumers contacted their lender, they discovered that MARS Defendants had never contacted their lenders, or taken any steps to initiate modification proceedings.

30.     When MARS Defendants failed to obtain the promised relief, they did not provide refunds to consumers.  Consumers who paid MARS Defendants' fees have suffered significant economic injury.

## FEDERAL STUDENT LOAN REPAYMENT PROGRAMS

31.     The U.S. Department of Education ("USDOE"), the largest federal lender and holder of legacy student loans, offers three traditional repayment plans to borrowers with federal student loans.  These plans give borrowers options to manage their student loan debt and make repayment of student loans more affordable.  The USDOE places borrowers automatically into the 10-year fixed payment standard plan, but borrowers may request enrollment in the graduated repayment plan or the extended repayment plan, which is available for loan amounts greater than $30,000.  The graduated and extended payment plans have 25-year terms and provide for either graduated or fixed payments.  Graduated payments are initially lower, but increase over time in anticipation of increased income.  Neither the extended nor graduated payment plans involve an application process and neither is

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

income-based.  A borrower can request either plan with just a phone call or letter.

32.     To assist borrowers struggling to make payments under the traditional repayment plans, Congress passed the College Cost Reduction and Access Act of 2007 ("CCRA").  The CCRA established a new income-based repayment ("IBR") plan to help borrowers whose loan balance is equal to or greater than their adjusted gross annual income.  This plan allows eligible borrowers who took out federal student loans prior to July 1, 2014, to choose to limit their monthly payments to 15% of their discretionary monthly income.  If the borrower makes all regularly scheduled payments, the government will forgive any unpaid loan balances after 25 years.  Eligible borrowers who took out loans after July 1, 2014, can choose to limit their monthly payments to 10% of their discretionary monthly income.  If any balance remains after making regular payments for 20 years, that amount may be forgiven.  However, because most borrowers will realize increased income over the payment period, monthly payment amounts under the IBR program may eventually increase to fully amortizing payments that would pay off the loans prior to reaching eligibility for loan forgiveness.  Further, any forgiven debt will likely be imputed as income for tax purposes.

33.     The CCRA also established the Public Service Loan Forgiveness Program ("PSLF").  The PSLF allows total or partial debt forgiveness for certain teachers and public service employees.  A full-time teacher who works for five consecutive years in a designated low-income elementary or secondary school may have $17,500 of his or her loan amount forgiven.  A public service employee may have his or her remaining debt forgiven after making 120 monthly payments under an eligible repayment plan while employed in public service.

34.     Eligible borrowers can apply electronically for IBR and PSLF plans through the USDOE's website at www.Studentloans.gov or by mailing a completed paper application to the USDOE or their loan servicer.  Neither the USDOE nor the loan

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

servicers charge borrowers any fee to apply for IBR or PSLF, and the application forms are simple, taking only about 30 minutes to complete.

35.    Lenders will grant forbearance while processing applications for an alternative repayment plan, and in some cases of hardship.  During forbearance, unpaid interest continues to accrue and may be capitalized, increasing the total amount due and in some cases the principal balance as well.

## STUDENT LOAN DEBT RELIEF SERVICES

36.    From at least June 2014 to the present, GEB d/b/a SLHD and SSL, SSLH, SDP, Tobias West, and Komal West ("Student Debt Relief Defendants") have engaged in a course of conduct to market and sell a program or services to renegotiate, settle, or otherwise alter the terms of payment for student loan debt.

37.    Many of the Student Debt Relief Defendants' customers are financially distressed borrowers in or at risk of delinquency or default on their federal student loans.  Some are already subject to seizure of their tax refunds or wage garnishment.  Student Debt Relief Defendants guarantee that they will lower consumers' monthly payments and secure debt forgiveness or other debt relief, including the lifting of garnishments and tax liens upon payment of a substantial fee.

38.    Student Debt Relief Defendants represent that if they are unable to secure the promised debt relief they will refund the fees paid by the consumers.  In numerous instances, Student Debt Relief Defendants have failed to obtain any relief for consumers or have not provided the promised relief, and have not provided the promised refund.

### The Student Loan Debt Relief Sales Pitch

39.    Student Debt Relief Defendants have marketed their student loan debt relief services primarily via outbound telemarketing calls to consumers and inbound telemarketing calls from consumers responding to Student Debt Relief Defendants' television and Internet advertising.  Student Debt Relief Defendants have marketed

their services on the Internet through use of the following websites:

www.studentloanhelpdirect.com; www.studentloanhd.com;

www.selectstudentloanhelp.com; www.selectslhelp.com;

www.selectstudentloan.com; www.slhdirect.com; www.selectstudentlh.com; and

www.selectdocprep.com.

40.     Student Debt Relief Defendants' student loan websites have claimed, at various time during the relevant time period, the following:

- **SELECT STUDENT LOAN HAS THE BEST STATEGIES TO GET LOWER PAYMENTS ON YOUR STUDENT LOAN DEBT**

- **GARNISHMENT LETTER** If you have received a letter warning you that your student loans are in default and threatening garnishment of your wages, you should contact us a soon as possible.
- **Let us help you to stop the wage garnishment and put you in a new repayment program.**

- **STUDENT LOAN HELP DIRECT WANT A SOLUTION FOR STUDENT DEBT?**
  Want to lower or eliminate your student loan payments? Interested in changing your payment plan?  Need one easy way out of debt?  Do you need RISK FREE solutions? We guarantee our work will get you the lowest monthly payment possible.

- ## We Are Here To Help You: Are you looking for a
  solution regarding your federal student loans? Your monthly payment could be too much to handle, or you missed a payment, or

you have fallen into default and your wages are being garnished.
Our friendly and professional staff are waiting to help you. Select
Student Loan was created to help you solve these problems and
help you to stop struggling with Federal Student Loans.

- Select Student Loan can work with the Department of Education to
  not only lower your monthly payment but also get you a certain
  level of forgiveness as well.
- Let us help you to stop the wage garnishment and put you in a new
  repayment program.

41.     In numerous instances, Student Debt Relief Defendants have told consumers during telephone sales presentations that they can renegotiate, settle, or alter the terms of payment for the consumer's student loan debt if they pay an up-front fee to enroll in their program.  Student Debt Relief Defendants tell consumers that they will secure for consumers a specified lower monthly student loan payment, loan forgiveness, and removal of tax liens and wage garnishments.  Student Debt Relief Defendants tell consumers that the ability to secure the promised relief is contingent on the consumer paying a fee to the Student Debt Relief Defendants.

42.     In numerous instances, Student Debt Relief Defendants have guaranteed the promised debt relief, telling consumers that if they are unable to obtain the promised debt relief they will fully refund the advance fee.

43.     In numerous instances, Student Debt Relief Defendants have represented to consumers that they are affiliated with or work directly with the USDOE, the government, or the consumer's loan servicer.

### Payment of Advance Fees for Student Debt Relief Services

44.     Student Debt Relief Defendants require and receive payment of a fee typically ranging from $500 to $800, prior to consumers executing a written agreement with their lender or servicer that incorporates an offer for student loan debt relief.  Student Debt Relief Defendants often allow consumers to make

COMPLAINT                                  **14**                    Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

installment payments of the fee, but tell consumers that they will not begin work on consumers' behalf until after they receive the full payment.

**Post-Enrollment Experience with Student Debt Relief Defendants' Service**

45.     Prior to consumers paying the requested advance fee, Student Debt Relief Defendants send consumers documents to sign and return.  The documents consist of an authorization to debit consumers' bank accounts or charge consumers' credit accounts; a client services agreement, and a limited power of attorney.  Consumers e-sign the documents and return them to the Student Debt Relief Defendants.  Consumer signatures on the power of attorney forms are not witnessed or notarized.  Loan servicers may reject the form because an electronic signature is an invalid form of signature for this type of instrument, and the form lacks a notary's acknowledgment.

46.     In numerous instances, Student Debt Relief Defendants posing as the consumer request forbearance, a temporary reprieve in the requirement to make monthly payments.  In numerous instances, Student Debt Relief Defendants do not tell consumers in advance they will seek forbearance, nor do they disclose to consumers that forbearance canresult in the capitalization of unpaid interest.  In some instances, Student Debt Relief Defendants tell consumers that the consumer will not be responsible for the accrued interest.  Many consumers have accrued thousands of dollars in unpaid interest during forbearance.

47.     In numerous instances, Student Debt Relief Defendants have failed to obtain the promised student loan debt relief.  In many instances, when consumers have contacted their lender, they have discovered that Student Debt Relief Defendants never contacted the lender.

48.     In numerous instances, consumers are unable to obtain refunds after Student Debt Relief Defendants fail to provide the promised student loan debt relief service.  Consumers who have paid Student Debt Relief Defendants' fees have suffered significant economic injury, including paying hundreds of dollars to

Student Debt Relief Defendants and receiving little or no service in return; increased loan balances from capitalized interest; falling behind or further behind on student loan payments; incurring penalties; and even going into delinquency, default, or having their wages garnished.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

49.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts and practices in or affecting commerce."

50.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### (False or Unsubstantiated Mortgage Relief Representations)

51.     In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of mortgage assistance relief services, MARS Defendants have represented, directly or indirectly, expressly or by implication:

    a.      that MARS Defendants typically will obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, will substantially lower their interest rates, or will help them avoid foreclosure;

    b.      that MARS Defendants will provide legal services, including negotiating on consumers behalf with lenders; and,

    c.      that MARS Defendants will refund consumers' fee if they fail to obtain the promised relief.

52.     In truth and in fact, in numerous instances, such representations were false or unsubstantiated at the time the representations were made.

53.     Therefore, MARS Defendants' representations as set forth in Paragraph 51 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

## (False or Unsubstantiated Student Loan Debt Relief Services Representations)

54.     In numerous instances, in connection with the advertising, marketing, promoting, offering for sale, or sale of student loan debt relief services, Student Debt Relief Defendants have represented, directly or indirectly, expressly or by implication:

a.     that Student Debt Relief Defendants will renegotiate, settle, or alter the terms of payment for consumers' student loan debts to secure a specified lower monthly loan payment, loan forgiveness, and removal of tax liens and wage garnishments;

b.     that the promised debt relief is guaranteed and if Student Debt Relief Defendants are unable to secure the promised debt relief they will fully refund consumers' fees;

c.     that consumers can only obtain the promised relief by paying Student Debt Relief Defendants' advance fee;

d.     that Student Debt Relief Defendants are affiliated with or work directly with the USDOE, the government, or consumers' loan servicer; and

e.     that consumers will not be responsible for the interest that accrues during forbearance.

55.     In truth and in fact, in numerous instances, such representations were false or unsubstantiated at the time the representations were made.

56.     Therefore, Student Debt Relief Defendants' representations as set forth in Paragraph 54 constitute deceptive acts or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE MARS RULE/REG. O

57.     In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans.  2009 Omnibus Act § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763-

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

64.  Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one provision of which became effective on December 29, 2010. The remaining provision, Section 322.5, became effective on January 31, 2011. These provisions were later recodified at 12 C.F.R. Part 1015 and renamed "Regulation O."

58.    MARS Defendants are "mortgage assistance relief provider(s)" as defined by the MARS Rule/Reg. O, 12 C.F.R. § 1015.2(j).  Under the MARS Rule/Reg. O, a "mortgage assistance relief provider" is "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity.  12 C.F.R. § 1015.2(j).

59.    The MARS Rule/Reg. O prohibits any MARS provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer.  12 C.F.R. § 1015.5(a).

60.    The MARS Rule/Reg. O prohibits any MARS provider from representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any MARS, that a consumer cannot or should not contact or communicate with his or her lender or servicer.  12 C.F.R. § 1015.3(a).61.  The MARS Rule/Reg. O prohibits any MARS provider from misrepresenting, expressly or by implication, any material aspect of any MARS, including but not limited to:

a.    the likelihood of negotiating, obtaining, or arranging any represented service or result.  12 C.F.R. § 1015.3(b)(1);

b.    the amount of time it will take the MARS provider to accomplish any represented service or result.  12 C.F.R. § 1015.3(b)(2);

COMPLAINT                                    **18**                          Federal Trade Commission
                                                                            915 2nd Ave., Ste. 2896
                                                                            Seattle, Washington 98174
                                                                            (206) 220-6350

c.     the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.  12 C.F.R. § 1015.3(b)(4);

d.     the terms or conditions of any refund, cancellation, exchange, or repurchase policy for a MARS, including, but not limited to, the likelihood of obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted, for a MARS. 12 C.F.R. § 1015.3(b)(6); or

e.     that the consumer will receive legal representation.  12 C.F.R. § 1015.3(b)(8).

61.     The MARS Rule/Reg. O prohibits any MARS provider from failing to place a statement in every general commercial communication disclosing that (i) the provider is not associated with the government, and that their service is not approved by the government or the consumer's lender, and (ii) the lender may not agree to modify a loan, even if the consumer uses the provider's service.  12 C.F.R. 1015.4(a)(1)-(2).

62.     The MARS Rule/Reg. O prohibits any MARS provider from failing to place a statement in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government or any lender,  (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and (iv) in certain cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit.  12 C.F.R. 1015.4(b)(1)-(3) and (c).

63.     Pursuant to Section 626 of the 2009 Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule/Reg. O constitutes an unfair or deceptive

act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III
### (Advance Fee for MARS)

64.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, MARS Defendants, in violation of  the MARS Rule/Reg. O, 12 C.F.R. § 1015.5(a), have asked for or received payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by MARS Defendants.

## COUNT IV
### (Advising Consumer Not to Communicate With Lender)

65.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, MARS Defendants, in violation of the MARS Rule/Reg. O, 12 C.F.R. § 1015.3(a), have represented expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer.

## COUNT V
### (Material Misrepresentations)

66.    In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, MARS Defendants, in violation of the MARS Rule/Reg. O, 12 C.F.R. § 1015.3(b)(1)-(4), (6) and (8), have misrepresented, expressly or by implication, material aspects of its services, including but not limited to:

   a.    MARS Defendants' likelihood of obtaining a modification of mortgage loans for consumers that will make their payments substantially more affordable;

COMPLAINT                                    20

b.     the amount of time it will take MARS Defendants to accomplish any represented service or result;

c.     the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

d.     the terms or conditions of any refund, cancellation, exchange, or repurchase policy for a mortgage assistance relief service, including, but not limited to, the likelihood of obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted, for a mortgage assistance relief service; and

e.     that the consumer will receive legal representation.

## COUNT VI

### (Failure to Disclose Material Facts Related to MARS)

67.     In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, MARS Defendants have failed to disclose, or to adequately disclose:

a.     in all general commercial communications:

1.     "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule/Reg. O, 12 C.F.R. §1015.4(a)(1); and

2.     "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of MARS Rule/Reg. O, 12 C.F.R. § 1015.4(a)(2).

b.     in all consumer-specific commercial communications:

1.     "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance from your lender [or servicer]. If you reject the offer, you do not have to pay us, [insert amount or method for calculating the amount]

for our services," in violation of the MARS Rule/Reg. O, 12 C.F.R. § 1015.4(b)(1);

2.     "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule/Reg. O, 12 C.F.R. 1015.4(b)(2);

3.     "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of MARS Rule/Reg. O, 12 C.F.R. § 1015.4(b)(3); and

4.     "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of MARS Rule/Reg. O, 12 C.F.R. § 1015.4 (c).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

68.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101 e*t seq*.  The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

69.     Student Debt Relief Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2 (aa), (cc), and (dd).  Under the TSR, a "telemarketer" is any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.  16 C.F.R. § 310.2(cc).  A "seller" is any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration.  *Id.* 310.2(aa).

70.     As amended, effective September 27, 2010, the TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of any debt relief service, including but not limited to, the amount of money or the

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

percentage of the debt amount that a customer may save by using the service; the amount of time necessary to achieve the represented results; [and]…the effect of the service on collections of the customer's creditors or debt collectors. 16 C.F.R. § 310.3(a)(2)(x).

71.     Under the TSR, a "debt relief service," means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector. 16 C.F.R. § 310.2(m).

72.     As amended, effective October 27, 2010, the TSR prohibits any seller or telemarketer from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

A.      the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

B.      the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector. 16 C.F.R. § 310.4(a)(5)(i);

C.      to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

i.      bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount, the individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

COMPLAINT                                    23

ii.     is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.  The percentage charged cannot change from one individual debt to another.  The amount saved is the difference between the amount owed at the time the debt was enrolled in the services and the amount actually paid to satisfy the debt.  16 C.F.R. § 310.4(a)(5)(i).

73.     Under the TSR, sellers and telemarketers are prohibited from failing to disclose truthfully, in a clear and conspicuous manner, before a customer consents to pay for any debt relief service that, to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, the use of the debt relief service may increase the amount of money the customer owes due to the accrual of fees and interest.  16 C.F.R. § 310.3(a)(1)(viii)(C).

74.     Under the TSR, sellers and telemarketers are prohibited from misrepresenting, directly or by implication, any material aspect of any debt relief service, including but not limited to, the amount of time necessary to achieve the represented results; the effect of the service on collection efforts of the customer's creditors or debt collectors; and the percentage or number of customers who obtain the represented results. 16 C.F.R. § 310.3(a)(2)(x).

75.     Student Debt Relief Defendants are "sellers" or "telemarketers" of "debt relief services," as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (m).

76.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

## COUNT VII

### (Collecting Advance Fees for Student Debt Relief Services)

77.     In numerous instances on or after October 27, 2010, in connection with the telemarketing of student loan debt relief services, Student Debt Relief Defendants have requested or received payment of a fee or consideration for debt relief services before: (a) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that agreement.

78.     Student Debt Relief Defendants' acts and practices, as described in Paragraph 77, are abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

## COUNT VIII

### (Misrepresentations in Connection with Telemarketing Student Loan Debt Relief Services)

79.     In numerous instances, in connection with the telemarketing of student loan debt relief services, Student Debt Relief Defendants have misrepresented, directly or indirectly, expressly or by implications, material aspects of their debt relief services, including but not limited to:

a.     that Student Debt Relief Defendants will renegotiate, settle, or alter the terms of payment of  consumers' student loan debts to secure a specified lower monthly loan payment, loan forgiveness, and removal of tax liens and wage garnishments;

b.     that the promised debt relief is guaranteed and if Student Debt Relief Defendants are unable to secure the promised debt relief they will fully refund consumers' fees;

c.     that consumers can only obtain the promised relief by paying Student Debt Relief Defendants' advance fee;

COMPLAINT                                    **25**                     Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

d.      that Student Debt Relief Defendants are affiliated with or work directly with the USDOE, the government, or consumers' loan servicer; and

e.      that consumers will not be responsible for the interest that accrues during forbearance.

80.    Student Debt Relief Defendants' acts and practices, as described in Paragraph 79, are deceptive telemarketing acts or practices that violate Sections 310.3(2)(a)(vii) and (x) of the TSR, 16 C.F.R. § 310.3(2)(a)(vii) and (x).

## COUNT IX

### (Failure to Disclose Material Facts in Connection With the Telemarketing of Student Loan Debt Relief Services)

81.    In numerous instances, in connection with the telemarketing of student loan debt relief services, Student Debt Relief Defendants have failed to truthfully disclose, in a clear and conspicuous manner, before a consumer has agreed to pay for their student loan debt relief services, that to the extent the debt relief service relies on or results in the customer's failure to make timely payments to creditors or debt collectors, the use of the debt relief service may increase the amount of money the customer owes due to the accrual of fees and interest.

82.    Student Debt Relief Defendants' acts and practices, as described in paragraph 81, are deceptive telemarketing acts or practices that violate Section 310.3(a)(1)(viii)(C), 16 C.F.R. § 310.3(a)(1)(viii)(C).

## CONSUMER INJURY

83.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, and the MARS Rule/Reg. O or the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

1

2

### THE COURT'S POWER TO GRANT RELIEF

3   84.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to

4   grant injunctive and such other relief as the Court may deem appropriate to halt

5   and redress violations of any provision of law enforced by the FTC.  The Court, in

6   the exercise of its equitable jurisdiction, may award ancillary relief, including

7   rescission or reformation of contracts, restitution, the refund of monies paid, and

8   the disgorgement of ill-gotten monies, to prevent and remedy any violation of any

9   provision of law enforced by the FTC.

10   85.   Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b),  authorizes this

11   Court to grant such relief as the Court finds necessary to redress injury to

12   consumers resulting from Student Debt Relief Defendants' violations of the TSR,

13   including the rescission or reformation of contracts, and the refund of money.

14   86.   Section 626 of the 2009 Omnibus Act authorizes this Court to grant such

15   relief as the Court finds necessary to redress injury to consumers resulting from

16   MARS Defendants' violations of the MARS Rule/Reg. O, including the rescission

17   or reformation of contracts, and the refund of money.

### PRAYER FOR RELIEF

18

19         Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b)

20   of the FTC Act, 15 U.S.C. § 53(b), Section 6(b) of the Telemarketing Act, 15

21   U.S.C. § 6105(b), the 2009 Omnibus Act, and the Court's own equitable powers,

22   requests that the Court:

23         A.   Award Plaintiff such preliminary injunctive and ancillary relief as

24   may be necessary to avert the likelihood of consumer injury during the pendency

25   of this action, and to preserve the possibility of effective final relief, including, but

26   not limited to, preliminary injunction, an order freezing assets, appointment of a

27   temporary receiver, immediate access to business premises, and expedited financial

28   discovery;

COMPLAINT                                27                    Federal Trade Commission
                                                               915 2nd Ave., Ste. 2896
                                                               Seattle, Washington 98174
                                                               (206) 220-6350

1    B.    Enter a permanent injunction to prevent future violations of the FTC
2  Act, the TSR and the MARS Rule/Reg. O;

3    C.    Award such relief as the Court finds necessary to redress injury to
4  consumers resulting from Defendants' violations of the FTC Act, and the MARS
5  Rule/Reg. O or the TSR, including, but not limited to, rescission or reformation of
6  contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten
7  monies; and

8    D.    Award Plaintiff the costs of bringing this action, as well as such other
9  and additional relief as the Court may determine to be just and proper.

10

11  Dated: *Feb. 10*      , 2016

12

13  Respectfully submitted,
    JONATHAN E. NUECHTERLEIN
14  General Counsel
    CHARLES A. HARWOOD
15  Regional Director

16

17

18

19  ELEANOR DURHAM
    Attorneys for Plaintiff
20  FEDERAL TRADE COMMISSION

21

22

23

24

25

26

27

28

COMPLAINT                          28

Federal Trade Commission
915 2nd Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350