JONATHAN E. NUECHTERLEIN
General Counsel
CHARLES A. HARWOOD
Regional Director
ELEANOR DURHAM MD Bar
Email:  edurham@ftc.gov
Federal Trade Commission
915 2nd Ave., Suite 2896, Seattle, WA 98174
(206) 220-4476 (Durham)
(206) 220-6366 (fax)
STACY PROCTER, CA Bar # 221078
Email:  sprocter@ftc.gov
10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024
(310) 824-4343 (Procter); (310) 824-4330 (fax)
Attorneys for Plaintiff Federal Trade Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> vs. <br><br> **GOOD EBUSINESS, LLC**, also d/b/a AAP Firm; Student Loan Help Direct; Select Student Loan; **SELECT STUDENT LOAN HELP, LLC; SELECT DOCUMENT PREPARATION, INC.; TOBIAS WEST** aka Tobey West, Toby West, and Eric West; and **KOMAL WEST**, <br><br> Defendants. | No.   CV 16-1048-ODW(JPRx) <br><br> [PROPOSED] PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF RECEIVER, LIMITED EXPEDITED DISCOVERY, AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS GOOD EBUSINESS, LLC, also d/b/a AAP Firm; Student Loan Help Direct; Select Student Loan; **SELECT STUDENT LOAN HELP, LLC; SELECT DOCUMENT PREPARATION, INC.** |

Plaintiff, Federal Trade Commission ("FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief and *Ex Parte* Application for Restraining Order with Asset Freeze, Appointment of Receiver, and Other Relief and Order to Show Cause Why Preliminary Injunction Should Not Issue ("Order") on February 16, 2016.  The Court entered the requested Order on February 16, 2016.  Dkt. 12.  Defendants were served with the Order and other related papers on February 19, 2016.  Returns of Service were filed by Plaintiff via ECF. Dkts. 20-22.  A show Cause Hearing has been scheduled for March 1, 2016.  Dkt. 14. Defendants Tobias and Komal West have informed Plaintiff that they do not intend at this time to retain counsel to represent them or the corporate defendants in this matter and will not oppose entry of Preliminary Injunction against GOOD EBUSINESS, LLC, also d/b/a AAP Firm; Student Loan Help Direct; Select Student Loan; SELECT STUDENT LOAN HELP, LLC; SELECT DOCUMENT PREPARATION, INC. ("Corporate Defendants").

Having considered the parties' pleadings, papers, and argument, the Court hereby **GRANTS** the Preliminary Injunction against Defendants GOOD EBUSINESS, LLC, also d/b/a AAP Firm; Student Loan Help Direct; Select Student Loan; SELECT STUDENT LOAN HELP, LLC; and SELECT DOCUMENT PREPARATION, INC.

### FINDINGS

1.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto.

2.     There is good cause to believe that venue is proper in this District.

3.     There is good cause to believe that Corporate Defendants have engaged and are likely to continue to engage in acts or practices that violate Section 5(a) of the FTC Act, the TSR, and the MARS Rule, and that the FTC is therefore likely to prevail on the merits of this action.

4.     There is good cause to believe that consumers will suffer immediate

and irreparable harm from Corporate Defendants' ongoing violations of Section 5(a) of the FTC Act, the TSR, and MARS Rule unless Corporate Defendants are restrained and enjoined by Order of this Court.

5.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the sale, transfer, dissipation, or concealment by Corporate Defendants of their assets or business records unless Corporate Defendants are immediately restrained and enjoined by Order of this Court.

6.     Good cause exists for appointing a receiver over the Corporate Defendants, permitting the FTC immediate access to Corporate Defendants' business premises, and permitting the FTC to take limited expedited discovery;

7.     Weighing the equities and considering the FTC's likelihood of ultimate success, the entry of this preliminary injunction with asset freeze, appointment of a receiver, immediate access to business premises, and other equitable relief is in the public interest.

8.     No security is required of any agency of the United States for the issuance of a preliminary injunction order.  Fed. R. Civ. P. 65(c).

## **DEFINITIONS**

For the purposes of this Preliminary Injunction the following definitions apply:

A.     "**Asset**" or "**Assets**" means any legal or equitable interest in, right to, or claim to, any real and personal property of any Corporate Defendant, or held for the benefit of any Corporate Defendant, wherever located, whether in the United States or abroad, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform

Commercial Code), cash, and trusts, including, but not limited to, any trust held for the benefit of any Corporate Defendant, and shall include both existing assets and assets acquired after the date of entry of this Order, or any interest therein.

B.      "**Assisting others**" includes: (1) performing customer service functions, including receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication; (3) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services; (4) providing names of, or assisting in the generation of, potential customers; (5) performing marketing, billing, or payment services of any kind; (6) acting or serving as an owner, officer, director, manager, or principal of any entity; or (7) providing telemarketing services.

C.      "**Corporate Defendants**" means Good EBusiness, LLC, Select Student Loan Help, LLC, and Select Document Preparation Services, Inc., and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

D.      "**Debt relief service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

E.      "**Document" and "electronically stored information**" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

**4**

F.      "**Electronic data host**" means any person or entity that stores, hosts, or otherwise maintains electronically stored information.

G.      "**Financial institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

H.      "**Material fact**" means any fact that is likely to affect a person's choice of, or conduct regarding, goods, or services.

I.      "**Mortgage assistance relief service**" or "**MARS**" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1.      stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.      negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.      obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.      negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling  loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.      negotiating, obtaining, or arranging (i) a short sale of a

dwelling, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder. The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services, or offering to sell a consumer a plan or subscription to a service that provides such assistance.

J.     "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

K.     "**Receivership Defendants**" means Good EBusiness, LLC, also d/b/a AAP Firm; Student Loan Help Direct; Select Student Loan; Select Student Loan Help, LLC; and Select Document Preparation, Inc.

L.     "**Receiver**" means the Receiver appointed in Section XV of this Order. The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver.

O.     "**Telemarketer**" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc).

P.     "**Telemarketing**" means a plan, program, or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

**I.     PROHIBITION ON COLLECTION OF ADVANCE FEES**

**IT IS THEREFORE ORDERED** that Corporate Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby preliminarily restrained and enjoined from:

A.    In connection with providing, offering to provide, or arranging for others to provide any MARS, requesting or receiving payment of any fee or other consideration for any MARS before the consumer has executed a written agreement with the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief that a Corporate Defendant obtained from the consumer's dwelling loan holder or servicer on the consumer's behalf, in violation of MARS Rule, 12 C.F.R. § 1015.5(a); and

B.    In connection with providing, offering to provide, or arranging for others to provide any debt relief service, requesting or receiving payment of any fees or consideration for any debt relief service before the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer, and the customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector, in violation of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

## II.    REPRESENTATIONS PROHIBITED BY SECTION 5 OF THE FTC ACT

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or debt relief service, are hereby preliminarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication that:

A.    Corporate Defendants typically will obtain mortgage loan modifications for consumers that will make consumers' payments substantially

more affordable, substantially lower their interest rates, or help them avoid foreclosure;

B.     Corporate Defendants will provide legal services, including forensic audits;

C.     Corporate Defendants will refund the consumer's fee if they fail to obtain the promised mortgage loan modification or other debt relief.

D.     Corporate Defendants can renegotiate, settle, or alter the terms of payment for consumers' student loan debts to secure a specified lower monthly loan payment, loan forgiveness, or removal of tax liens and wage garnishments;

E.     The promised debt relief is guaranteed;

F.     Consumers can only obtain the promised debt relief by paying Corporate Defendants' advance fee;

G.     Corporate Defendants are affiliated with or work directly with the U.S. Department of Education ("USDOE"), the government, or consumers' loan servicer; and

I.     Consumers will not be responsible for the interest that accrues while Corporate Defendants are providing the promised debt relief service.

**III.    REPRESENTATIONS PROHIBITED AND DISCLOSURES
REQUIRED BY THE MARS RULE**

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or debt relief service, are hereby preliminarily restrained and enjoined from engaging in the following conduct:

A.     Representing, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation

1    of 12 C.F.R. § 1015.3(a);

2        B.      Misrepresenting, expressly or by implication, any material aspect of

3    any MARS, including, but not limited to:

4            1.      The likelihood of negotiating, obtaining, or arranging any

5    represented service or result, including, but not limited to, the likelihood of

6    negotiating, obtaining, or arranging a modification of any term of a dwelling loan,

7    including a reduction in the amount of interest, principal balance, monthly

8    payments, or fees, in violation of 12 C.F.R. § 1015.3(b)(1);

9            2.      The amount of time it will take the MARS provider to

10   accomplish any represented service or result, in violation of 12 C.F.R. §

11   1015.3(b)(2);

12           3.      That a MARS is affiliated with, endorsed or approved by, or

13   otherwise associated with the government or the maker, holder, or servicer of the

14   consumer's dwelling loan, in violation of 12 C.F.R. § 1015.3(b)(3);

15           4.      The terms or conditions of any refund, cancellation, exchange,

16   or repurchase policy for a MARS, including, but not limited to, the likelihood of

17   obtaining a full or partial refund, or the circumstances in which a full or partial

18   refund will be granted, for a MARS, in violation of 12 C.F.R. § 1015.3(b)(6); or

19           5.      That the consumer will receive legal representation, in violation

20   of 12 C.F.R. § 1015.3(b)(8);

21       C.      Failing to disclose the following information in all general and

22   consumer-specific commercial communications:

23           1.      "[Name of Company] is not associated with the government,

24   and our service is not approved by the government or your lender," in violation of

25   12 C.F.R. § 1015.4(a)(1) and (b)(2); and

26           2.       "Even if you accept this offer and use our service, your lender

27   may not agree to change your loan," in violation of 12 C.F.R. § 1015.4(a)(2) and

28   (b)(3);

D.      Failing to disclose the following information in all consumer-specific commercial communications:  "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of 12 C.F.R. § 1015.4(b)(1).  For the purposes of this section, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the MARS that are the subject of the sales offer, including but not limited to, all fees and charges.

## IV.   REPRESENTATIONS PROHIBITED AND DISCLOSURES REQUIRED BY THE TSR

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents,  employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promotion, offering for sale, sale, or provision of any debt relief service, are hereby preliminarily restrained and enjoined from engaging in the following conduct:

A.      Misrepresenting, expressly or by implication, that Corporate Defendants can renegotiate, settle, or alter the terms of payment for the consumer's student loan debt to secure a specified lower monthly loan payment, loan forgiveness, and  removal of tax liens and wage garnishments;

B.      Misrepresenting, expressly or by implication, that the promised debt relief is guaranteed and if Corporate Defendants are unable to secure the promised debt relief they will fully refund the advance fee to the consumer;

C.      Misrepresenting, expressly or by implication, that Corporate Defendants are affiliated with or work directly with the USDOE, the government, or the consumer's loan servicer; and

D.      Failing to truthfully disclose, in a clear and conspicuous manner, before a consumer has agreed to pay for  student loan debt relief services, that to the extent the debt relief service relies on or results in the customer's failure to make timely payments to creditors or debt collectors,  the use of the debt relief service may increase the amount of money the customer owes due to the accrual of fees and interest.

**V.      PRESERVATION OF RECORDS AND TANGIBLE THINGS**

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or other debt relief service, are hereby preliminarily enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, any documents or records that relate to the business practices, or business or personal finances, of Corporate Defendants, or an entity directly or indirectly under the control of Corporate Defendants.

**VI.     DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONICALLY STORED INFORMATION**

**IT IS FURTHER ORDERED** that immediately upon service of the Order upon them and pending determination of the FTC's request for a permanent injunction, (1) any person hosting any Internet website, server, or cloud-based electronic storage for, or on behalf of, any Corporate Defendant, and (2) Corporate Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A.     Immediately take all necessary steps to ensure that any Internet website used by Corporate Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or other debt relief service, and containing statements or representations prohibited by Sections II, III, and IV of this Order, cannot be accessed by the public; and

B.     Prevent the alteration, destruction or erasure of any (1) Internet website used by Corporate Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or other debt relief service, by preserving such websites in the format in which they are maintained currently, and (2) any electronically stored information stored on behalf of Corporate Defendants or entities in active concert or participation with any of them.

## VII.   SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a permanent injunction, any domain name registrar shall suspend the registration of any Internet website used by Corporate Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any MARS or other debt relief service, and containing statements or representations prohibited by Sections II, III, IV of this Order.

## VIII.   PROHIBITION ON USE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation, or court order, Corporate Defendants, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from using, benefitting from, selling, renting, leasing, transferring, or otherwise disclosing consumer information, including the name, address, telephone number, email address, Social Security Number, credit card number, debit card number, bank account number, any financial account number or any data that enables

access to a customer's account, or other identifying information of any person which any Corporate Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any of the Corporate Defendants.

## IX.   ASSET FREEZE

**IT IS FURTHER ORDERED** that Corporate Defendants, and their officers, agents, employees, and attorneys, and all persons or entities directly or indirectly under the control of any of them, including any Financial Institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order, are hereby preliminarily restrained and enjoined from directly or indirectly:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets, or any interest therein, wherever located, including outside the United States, that are:

1.    owned or controlled, directly or indirectly, by any Corporate Defendant, in whole or in part, or held, in whole or in part, for the benefit of any Corporate Defendant;

2.    in the actual or constructive possession of any Corporate Defendant;

3.    owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Corporate Defendant, or any other entity acting under a fictitious name owned by or controlled by any Corporate Defendant, and any Assets held by, for, or under the name of any Corporate Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company,

payment processing company, precious metal dealer, or other financial institution or depository of any kind;

        B.     Opening or causing to be opened any safe deposit boxes titled in the name of any Corporate Defendant, or subject to access by any Corporate Defendant;

        C.     Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Corporate Defendant;

        D.     Obtaining an unsecured or secured loan;

        E.     Incurring liens or encumbrances on real property, personal property or other Assets in the name, singly or jointly, of any Corporate Defendant; and

        F.     Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Corporate Defendant.

The Assets affected by this Section shall include:  (1) all Assets of Corporate Defendants as of the time this Order is entered; and (2) for Assets obtained after the time this Order is entered, those Assets of Corporate Defendants that are derived, directly or indirectly, from the Corporate Defendants' activities as described in the FTC's Complaint.  This Section does not prohibit transfers to the Receiver, as specifically required in Section XVIII (Delivery of Receivership Property) of this Order.

**X.**    **<u>RETENTION OF ASSETS AND DOCUMENTS BY THIRD PARTIES</u>**

**IT IS FURTHER ORDERED** that, pending determination of the FTC's request for a preliminary injunction, any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Corporate Defendant or other party subject to Section IX above, or has held,

controlled, or maintained any such account, document, electronically stored information, or asset at any time shall:

A.   Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under such entity's or person's control, except as directed by further order of the Court or as directed in writing by the Receiver regarding accounts, documents, or electronically stored information, or asset held in the name of or benefit of any Corporate Defendant;

B.   Provide the Receiver, the Receiver's agents, the FTC and the FTC's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of Corporate Defendants for forensic imaging;

C.   Deny access to any safe deposit box titled in the name, individually or jointly, or subject to access by, any Corporate Defendant or other party subject to Section IX above;

D.   Provide to counsel for the FTC and the Receiver, within seven (7) business days of being served with a copy of this Order a sworn statement setting forth:

1.   the identification number of each account or asset titled: (a) in the name, individually or jointly, of any Corporate Defendant; (b) held on behalf of, or for the benefit of, any Corporate Defendant; (c) owned or controlled by any Corporate Defendant; or (d) otherwise subject to withdrawal access or use by, or under the signatory power of any Corporate Defendant or any other party subject to Section IX above;

2.   the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

3.      the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Corporate Defendant or other party subject to Section IX above; and

4.      if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance or value on said date, and the name or the person or entity to whom such account or asset was remitted;

E.      Provide to counsel for the FTC and the Receiver within seven (7) business days after being served with a request, copies of all documents pertaining to such account or asset, including, but not limited to: originals or copies of account applications, account statements, underwriting files, chargeback records, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee;

F.      Cooperate with all reasonable requests of the FTC relating to this Order's implementation;

G.      The Assets subject to this provision include: (a) all Assets of each Corporate Defendant deposited as of the time this Order is entered, and (b) those Assets deposited after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint; and

H.      The FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Corporate Defendant or other party subject to Section IX above, or has held, controlled, or maintained any such account, document, electronically stored

16

information, or asset at any time, and such financial or brokerage institution, business entity, electronic data host, or person shall respond to such subpoena within three (3) business days after service.  The FTC may effect service by facsimile or electronic mail.

## XI.   FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Corporate Defendant, within seven (7) business days of service of this Order, shall prepare and deliver to counsel for the FTC and to the receiver:

A.      For each of the Corporate Defendants, a completed financial statement accurate as of the date of service of this Order upon such Corporate Defendant (unless otherwise agreed upon with FTC counsel) in the form of Attachment A to this Order captioned "Financial Statement of Corporate Defendant";

B.      For all Corporate Defendants, a list of all officers and directors of the Corporate Defendants and all other individuals or entities with authority to direct the operations of the Corporate Defendants or withdraw money from the accounts of the Corporate Defendants; and

C.      For each Corporate Defendant, a completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth $2,500 or more since January 1, 2012. Such statement shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; (d) the method of the transfer or assignment, including the name of each Financial Institution and the accounts involved; and (e) the type and amount of consideration paid the Corporate Defendant.

## XII.   CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish to the FTC a consumer report concerning any Corporate Defendant.

**XIII.  REPATRIATION OF FOREIGN ASSETS**

**IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, each Corporate Defendant shall:

A.     Provide counsel for the FTC with a full accounting of all assets, accounts, funds, and documents outside of the territory of the United States that are held either:  (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.     Transfer to the territory of the United States all assets, accounts, funds, and documents in foreign countries held either:  (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly; Hold and retain all repatriated assets, accounts, funds, and documents, and prevent any transfer, disposition, or dissipation whatsoever of any such assets, accounts, funds, or documents; and

C.     Provide the FTC access to all records of accounts or assets of the Corporate Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to this Order as **Attachment C**.

**XIV.  NON-INTERFERENCE WITH REPATRIATION**

**IT IS FURTHER ORDERED** that Corporate Defendants, and each of their successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section XIII of this Order, including but not limited to:

A.     Sending any communication, statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section XIII of this Order; and

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section XIII.

## XV.   APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Thomas W. McNamara is appointed Receiver for the business activities of Receivership Defendants with the full power of an equity receiver.  The Receiver shall be an agent of this Court and solely an agent of this Court in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all local rules and laws governing federal equity receivers, including but not limited to Local Rules 66-1 through 66-5.1 and Local Rule 66-8.

## XVI.  DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, attorney, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.     Take exclusive custody, control, and possession of all Assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The

Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and manage all assets and documents of the Receivership Defendants, and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants, including returning possession of the leased premises at 3530 Wilshire Blvd to the landlord, liquidating the furniture and equipment at that site, making available for pickup any leased equipment at that site and boxing and storing offsite all paper documents and computer hard drives. *Provided, however*, that the Receiver shall not attempt to collect or receive any amount from a consumer if the Receiver believes the consumer was a victim of the unlawful conduct alleged in the Complaint in this matter;

C.     Take all steps necessary to secure the business premises of the Receivership Defendants. Such steps may include, but are not limited to, the following, as the Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all Receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords; (4) videotaping and/or photographing all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and (7) requiring all employees, independent contractors, and consultants of the Receivership

Defendants to complete a questionnaire submitted by the Receiver;

D.     Conserve, hold, and manage all Receivership Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of Assets;

E.     Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Receiver deems to be advisable or necessary;

F.     Enter into contracts and purchase insurance as the  Receiver deems to be advisable or necessary;

G.     Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the  Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the  Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order, including but not limited to the law firm in which the Receiver is a partner;

J.     Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The  Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the

Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

K.     Determine and implement the manner in which the Receivership Defendant will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising collection materials and implementing monitoring procedures;

L.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N.     Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the receivership estate;

O.     Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P.      Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The  Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q.      Maintain accurate records of all receipts and expenditures that he makes as  Receiver; and

R.      Maintain the chain of custody of all of Receivership Defendants' records in his possession.

## XVII.  <u>COOPERATION WITH THE  RECEIVER</u>

**IT IS FURTHER ORDERED** that Corporate Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Receiver.  Corporate Defendants' cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any login, password or biometric identifier required to access any computer or electronic files or information in or on any medium; and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.  Corporate Defendants are hereby preliminarily restrained and enjoined from directly or indirectly:

A.      Transacting any of the business of the Receivership Defendants;

B.      Excusing debts owed to the Receivership Defendants;

C.      Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring, or otherwise  disposing of any documents, electronically

stored information, or equipment of any Receivership Defendant;

D.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

F.    Failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of any Assets within the receivership estate that the Receiver or the FTC has identified; or

G.    Doing any act or thing whatsoever to interfere with the Receiver's taking and keeping custody, control, possession, or managing of the Assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

## XVIII.  **DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

A.    Immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Receiver, Corporate Defendants or any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Receiver:

1.    All assets of the Receivership Defendants;

2.    All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer

lists, title documents and other papers;

       3.    All assets belonging to members of the public now held by the Receivership Defendants;

       4.    All keys, computer and other passwords, entry codes, combinations to locks required to open or gain or secure access to any assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

       5.    Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

      B.    In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XVIII, the Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)) to seize the asset, document, or other thing and to deliver it to the Receiver.

## XIX.   RECEIVER'S REPORTS

      **IT IS FURTHER ORDERED** that the Receiver shall report to this Court on or before the date set for the hearing regarding the Preliminary Injunction, regarding:  (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated Assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Receiver intends to take in the future to:  (a) prevent any diminution in the value of Assets of the Receivership Defendants; (b) pursue receivership Assets from third parties; and (c) adjust the liabilities of the Receivership Defendants, if

appropriate; and (5) any other matters which the Receiver believes should be brought to the Court's attention.  Provided, however, if any of the required information would hinder the Receiver's ability to pursue receivership Assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## XX.  COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or hired by the Receiver as authorized under this Order, shall be entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of any report required by Section XIX.  The Receiver shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Court.

## XXI.  RECEIVER'S BOND/LIABILITY

**IT IS FURTHER ORDERED** that no bond shall be required in connection with the appointment of the Receiver.  Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by any of the Defendants, their officers, agents, employees, and attorneys, or any other person, by reason of any act performed in the connection with the discharge of the Receiver's duties and responsibilities, including, but not limited to, withdrawal from the case under Section XXII.

## XXII. WITHDRAWAL OF  RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and professional retained by the Receiver, including but not limited to, his attorneys and accountants, be are hereby authorized to withdraw from his or her respective appointments or

representations and apply for payment of their professional fees and costs at any time after the date of this Order, for any reason in their sole discretion, by sending written notice seven (7) days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Receiver's work, findings, and recommendations, as well as an accounting for all funds and assets in the possession or control of the Receiver. The Receiver shall be relived of all liabilities and responsibilities, and the Receiver shall be exonerated and the receivership deemed closed seven (7) days from the date of mailing of such notice of withdrawal. The Court will retain jurisdiction to consider the fee applications, report, and accounting submitted by the Receiver.

## XXIII.   RECEIVER'S ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A.     The Receiver, and his representatives, agents, and assistants, shall have immediate access to all business premises and storage facilities, owned, controlled, or used by any Receivership Defendant, including but not limited to the offices and facilities at 3350 Wilshire Blvd., Los Angeles, California 92036, and any offsite mail drops used by any Receivership Defendant. The Receiver is authorized to employ the assistance of law enforcement as he deems necessary to effect service and peacefully implement this Order. The Receiver may exclude Receivership Defendants and their employees from part or all of the business premises during the immediate access. The purpose of the immediate access shall be to effect service and to inspect and copy the business and financial records of the Receivership Defendants, including forensic imaging of electronically stored information. Such business records include, but are not limited to, correspondence, contracts, emails, and financial data;

B.     The Receiver and its representatives, agents, and assistants, shall have the right to remove materials from the above-listed premises for inspection, and

copying;

C.    Receivership Defendants and all employees or agents of Receivership Defendants shall provide the Receiver with any necessary means of access to documents and records, including, without limitation, the locations of the Receivership Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information;

D.    If any documents, computers, or electronic data storage devices containing information related to the business practices or finances of the Receivership Defendant are at a location other than those listed herein, including but not limited to, the personal residence(s) of the Defendants, then, immediately upon notice of this Order, Defendants shall produce to the Receiver all such documents, computers, or electronic data storage devices.  To prevent the destruction of electronic data, upon service of this Order upon Receivership Defendant(s), any computers or electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access; and

E.    FTC representatives may attend the immediate access for the purposes identified herein; however, FTC representatives may only attend with the Receiver's consent, and under the Receiver's supervision**.**

**XXIV.  PARTIES' ACCESS TO BUSINESS PREMISES AND RECORDS**

**IT IS FURTHER ORDERED** that the Receiver shall allow the FTC, the Defendants, and their representatives reasonable access to the premises of the Receivership Defendants.  The purpose of this access shall be to inspect, inventory, and copy any documents and other property owned by, or in the possession of, the Defendant, provided that, those documents and property are not removed from the premises without the permission of the Receiver.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

If the Receiver permits the FTC to take initial forensic images of receivership data during the immediate access (or at any other time), the Receiver must: (1) supervise the FTC's forensic imaging; (2) have a qualified forensic professional onsite during the imaging to ensure the integrity of the images the FTC takes; (3) retain a copy of the data; and (4) provide any Defendant a copy upon request.

## XXV. **BANKRUPTCY PETITIONS**

**IT IS FURTHER ORDERED** that, in light of the appointment of the Receiver, the Receivership Defendants are hereby prohibited from filing petitions for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

## XXVII. **STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during the pendency of the Receivership ordered herein, the Receivership Defendants and all customers, principals, investors, creditors, stockholders, lessors, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Receivership Defendant, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents, and employees be and are hereby stayed from:

1.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.      Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not; or

4.      Doing any act or thing whatsoever to interfere with the Receiver's taking custody, control, possession, or management of the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants.

B.      This Section does not stay:

1.      The commencement or continuation of a criminal action or proceeding;

2.      The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.      The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, or

4.      The issuance to the Receivership Defendants of a notice of tax deficiency.

## XXVIII.  CORRESPONDENCE WITH PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent via electronic submission and Federal Express to:

Eleanor Durham
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174

edurham@ftc.gov

with a copy to:

Stacy Procter
Federal Trade Commission
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
sprocter@ftc.gov

## XXIX.  <u>LIMITED EXPEDITED DISCOVERY</u>

**IT IS FURTHER ORDERED** that the FTC is granted leave to conduct
certain expedited discovery, and that, commencing with the time and date of this
Order, in lieu of the time periods, notice provisions, and other requirements of
Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited
discovery as to parties and non-parties shall proceed as follows:

A.     The FTC may, upon three (3) calendar days' notice, take the
deposition of any person or entity, whether or not a party, in any judicial district,
for the purpose of discovering:  (1) the assets of Corporate Defendants; (2) location
of documents; and (3) compliance with this Order.  Depositions may be conducted
telephonically or in person.  Deposition transcripts that have not been signed by the
witness may be used at the preliminary injunction hearing in this matter.  *Provided
that,* notwithstanding Federal Rule of Civil Procedure 30(a)(2), this Section shall
not preclude any future depositions by the FTC.  *Provided further,* that any
deposition taken pursuant to this Section shall be in addition to, and not subject to,
the presumptive limits on depositions set forth in Federal Rule of Civil Procedure
30(a)(2)(A).

B.     The FTC may serve interrogatories for the purpose of discovering:
(1) the assets of Defendants; (2) location of documents; and (3) compliance with
this Order.  Corporate Defendants shall respond within five (5) calendar days after
the FTC serves such interrogatories.  *Provided that,* notwithstanding Federal Rule

of Civil Procedure 33(a)(1), this Subsection shall not preclude any future interrogatories by the FTC.

C.    The FTC may, upon five (5) calendar days' notice, including through the use of a Rule 45 Subpoena, demand the production of documents from any person or entity, whether or not a Corporate Defendant, relating to: (1) the assets of Corporate Defendants; (2) the location of documents; and (3) compliance with this Order. *Provided that* two (2) calendar days' notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data.

D.    The FTC is granted leave to subpoena documents immediately from any financial institution, account custodian, or other entity or person that holds, controls, or maintains custody of any account or asset of any Corporate Defendant(s), or has held, controlled or maintained custody of any account or asset of any Corporate Defendant(s).  The subject of such Subpoena may include the nature, location, status, and extent of Corporate Defendants' assets, and compliance with this Order, and such financial institution, account custodian or other entity shall respond to such subpoena within five (5) business days after service.

E.    For purposes of discovery pursuant to this Section, service shall be sufficient if made by facsimile or by overnight courier to any branch or location.

**XXX.  SERVICE OF THIS ORDER**

    **IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile, email, hand-delivery, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any Financial Institution or other entity or person that may have possession, custody, or control of any documents or assets of any Corporate Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any Financial Institution shall effect

service upon the entire Financial Institution.

## XXXI.  DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that within three (3) calendar days after service of this Order, Corporate Defendants shall provide a copy of this Order to each of their agents, employees, directors, officers, subsidiaries, affiliates, attorneys, independent contractors, representatives, franchisees, and all persons in active concert or participation with Corporate Defendants.  Within five (5) calendar days following this Order, Corporate Defendants shall provide the FTC with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons that Corporate Defendants have served with a copy of this Order in compliance with this provision.

## XXXV.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.


**IT IS SO ORDERED,** this 1st day of March, 2016, at _____ AM/PM, Pacific Standard Time.

UNITED STATES DISTRICT JUDGE