O

# United States District Court
# Central District of California

| | |
|---|---|
| FEDERAL TRADE COMISSION, | Case No. 2:16-cv-01048-ODW-JPR |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [45]** |
| GOOD EBUSINESS, LLC, also d/b/a AAP FIRM, STUDENT LOAN HELP DIRECT, and SELECT STUDENT LOAN; SELECT STUDENT LOAN HELP, LLC; SELECT DOCUMENT PREPARATION, INC.; TOBIAS WEST; and KOMAL WEST, | |
| Defendants, and | |
| BEVERLY HILLS TAX GROUP, LLC, | |
| Relief Defendant. | |

# I. INTRODUCTION

On March 8, 2016, Plaintiff Federal Trade Commission filed its First Amended Complaint against Defendants Good Ebusiness, LLC (doing business as AAP Firm, Student Loan Help Direct, and Select Student Loan), Select Student Loan Help, LLC, Select Document Preparation, Inc., Tobias West, and Komal West ("Defendants"), as well as Relief Defendant Beverly Hills Tax Group, LLC ("Relief Defendant").

Plaintiff alleges Defendants violated the Federal Trade Commission Act ("FTC Act"), the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), and the 2009 Omnibus Appropriations Act ("2009 Omnibus Act") by preying on financially struggling consumers and promising to make their mortgage or student loan payments substantially lower by renegotiating with their lender—but without ever having any intention of actually doing so. (First Am. Compl. ("FAC"), ECF No. 31.) The Clerk of Court entered default against Defendants Good Ebusiness, Student Loan Help Direct, Select Student Loan, Select Student Loan Help, and Select Document Preparation ("Defaulting Defendants") and Relief Defendant on March 29, 2016. (ECF No. 40.) Plaintiff subsequently moved for default judgment against Defaulting Defendants, in which Plaintiff seeks monetary relief equal to revenues less chargebacks between August 2013 and the end of February 2016 (totalling $2,329,456), disgorgement of all funds in Beverley Hills Tax Group's accounts, and an injunction banning Defaulting Defendants from selling unsecured or secured debt relief products or services, making material misrepresentations in connection with any product or service, or making claims in connection with any product or service without possessing competent and reliable substantiation. (Mot. Default J. ("Mot.") 8–13, ECF No. 45.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion.[1]

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiff Federal Trade Commission ("FTC") is an independent agency of the United States Government created by 15 U.S.C. §§ 41—58. (FAC ¶ 4.) Defendant Good Ebusiness, LLC ("GEB") is incorporated in Nevada and has also done business as The AAP Firm ("AAP"), Student Loan Help Direct ("SLHD"), and Select Student Loan ("SSL"). (*Id.* ¶ 6.) Defendant Select Student Loan Help, LLC ("SSLH") is incorporated in Florida. (*Id.*¶ 7.) Defendant Select Document Preparation, Inc. ("SDP") is also incorporated in Nevada. (*Id.* ¶ 8.) Each corporation is controlled by Defendants Tobias West and his wife, Komal West. (*Id.* ¶¶ 9–10.) Relief Defendant Beverly Hills Tax Group has received funds or assets that can be traced to Defendants' fraudulent business practices as alleged in the FAC. (*Id.* ¶ 11.)

From at least January 2014 to August 2014, Defendants GEB (d/b/a AAP) and Tobias West engaged in a course of conduct to market and sell mortgage assistance relief services ("MARS"). (*Id.* ¶ 14.) These "MARS Defendants" marketed their services primarily via unsolicited outbound telemarketing calls, inbound telemarketing calls from consumers responding to online advertising at their website, and direct mail advertising. (*Id.* ¶ 15.) To induce consumers, MARS Defendants promised consumers that they would lower the consumer's monthly mortgage payment, mortgage interest rate, or obtain loan forbearance, a loan modification, or other loan restructuring. (*Id.* ¶ 16.) Furthermore, MARS Defendants purported to be a law firm that would provide forensic loan audits and other services to identify errors in consumers' mortgage loan documents, ferret out predatory lending practices, gather information to defend against foreclosure, and win concessions from lenders. (*Id.* ¶ 17.) MARS Defendants charged an initial up-front fee, ranging from $1,000 to $5,000, and represented that, if they were unable to secure the promised relief, they would fully refund all fees paid by the consumers. (*Id.* ¶ 18.) However, in numerous instances, MARS Defendants failed to obtain the promised relief for their customers and have not provided the promised refund. (*Id.* ¶ 19.)

From at least June 2014 to the present, Defendants GEB (d/b/a SLHD and SSL), SSLH, SDP, Tobias West, and Komal West ("Student Debt Relief Defendants") have engaged in a similar course of conduct to market and sell a program that aims to renegotiate, settle, or otherwise alter the terms of payment for a customer's student loan debt. (*Id.* ¶¶ 37, 40–41.) Student Debt Relief Defendants represent that, if they are unable to secure the promised debt relief, they will refund the fees paid by consumers (*Id.* ¶ 38.) However, in numerous instances Student Debt Relief Defendants have failed to obtain the promised relief and have not provided the promised refund. (*Id.*) Relief Defendant Beverly Hills Tax Group has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through these mortgage and student loan relief practices. (*Id.* ¶ 84.)

On February 16, 2016, Plaintiff filed its initial Complaint against Defendants seeking a permanent injunction and other equitable relief. (ECF No. 1.) Plaintiff also requested an Ex Parte Temporary Restraining Order ("TRO") and sought asset relief and the appointment of a receiver. (ECF No. 3.) The Court granted the TRO. (ECF No. 12.) On February 29, 2016, the Court entered a preliminary injunction against Defendants Tobias and Komal West, and against Defaulting Defendants on March 1, 2016. (ECF Nos. 26–27.) On March 8, 2016, Plaintiff filed its First Amended Complaint, adding Beverley Hills Tax Group, LLC, as a relief defendant. (ECF No. 31.) On March 29, 2016, after Defendants failed to timely respond to Plaintiff's FAC, the Clerk of Court entered a default against Defaulting Defendants GEB (d/b/a AAP, SLHD, and SSL), SSLH, and SDP, and Relief Defendant Beverley Hills Tax Group. (ECF No. 40.) Plaintiff subsequently filed the present Motion for Default Judgment. (ECF No. 45.) Plaintiff's Motion is now before the Court for decision.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a). District courts

have discretion over whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When a party moves for a default judgment, the Court accepts the well-pleaded factual allegations in the complaint as true, with the exception that the moving party must submit evidence establishing the amount of damages sought. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam); Fed. R. Civ. P. 54(c) ("[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]").

In exercising its discretion, a court must consider several factors (the *Eitel* factors), which include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party the default was entered; (2) identification of the pleading on which the default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice if required. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Here, Plaintiff has satisfied these requirements. Plaintiff's counsel submitted a declaration stating that the Clerk entered a default against Defendants on the First Amended Complaint on March 29, 2016. (Durham Decl. ¶ 2, ECF No. 45-1; *see also* ECF No. 40.) Plaintiff's counsel also declares that Defaulting Defendants are not

infants, incompetent, or active service members, and that they were properly served with written notice via email on May 13, 2016. (Durham Decl. ¶¶ 4–6.) Plaintiffs have thus complied with the procedural prerequisites for default judgment.

**B.** *Eitel* **Factors**

The Court finds that the *Eitel* factors also weigh in favor of default judgment. The Court will discuss each factor in turn.

### i. Plaintiff Would Suffer Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if the Court does not enter a default judgment against Defendant. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff contends that it would suffer prejudice in the absence of a default judgment, as it will be forced to commit time and resources to prosecute a lawsuit in which the Defaulting Defendants will not participate. *See, e.g.*, *Fed. Trade Comm. v. 1263523 Ontario Inc.*, 205 F. Supp. 205, 208-09 (S.D.N.Y. 2002) (denial of default judgment would be "unfairly prejudicial" to the FTC when defendant failed to respond to a complaint or default motion, or to enter an appearance). This factor favors entry of default judgment because Defaulting Defendants have failed to appear or offer a defense in this case. Therefore, the only way Plaintiff can obtain relief as well as save resources is through default judgment.

### ii. Merits of the Claims and Sufficiency of the Complaint

The second and third factors, the merits of Plaintiff's substantive claims and the sufficiency of its Complaint, also support an entry of default judgment. These factors require plaintiffs to "state a claim upon which they may recover." *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

#### a. False or Unsubstantiated Representations Claims

Plaintiff contends that Defendants made false and unsubstantiated claims regarding their ability to lower consumers' mortgage and student loan payments. (FAC ¶¶ 52–57.) Under the FTC Act, unfair methods of competition in or affecting

commerce, and unfair or deceptive acts or practices in or affecting commerce, are unlawful. 15 U.S.C. § 45(a). False or misleading representation has an anti-competitive effect. *Cal. Dental Ass'n v. Fed. Trade Comm.*, 526 U.S. 756, 771–72 (1999). Business practices characterized by deception, bad faith, fraud, and oppression are unfair methods of competition. *Consol. Book Publ'rs, Inc. v. Fed. Trade Comm.*, 53 F.2d 942, 945 (1931).

Here, Defendants represented themselves as lawyers that would substantially lower a consumer's mortgage and/or student loan payments. (FAC ¶¶ 52, 55.) Furthermore, they told consumers that they would refund their fees if they were unsuccessful in obtaining the promised relief. (*Id.* ¶¶ 25, 52, 55.) However, Plaintiff alleges that upon failure to obtain lower payments, Defendants did not provide the promised refunds. (*Id.* ¶¶ 31, 49.) Plaintiff also alleges that such representations were false or unsubstantiated at the time they were made. (*Id.* ¶¶ 53, 56.) Because plaintiff's allegations are taken as true on default, the Court finds that Plaintiff has made its prima facie case for a section 45(a) violation. Therefore, the False and Unsubstantiated Representations claims are deemed meritorious.

### b. MARS Rules Violations Claims

In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans. 2009 Omnibus Act § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763–64. These provisions were subsequently codified at 12 C.F.R. Part 1015 and renamed "Regulation O." Under these regulations, a "mortgage assistance relief provider" is "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service," other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such an individual or entity. 12 C.F.R. § 1015.2(j). Here, Defendants engaged in a course of conduct to market and sell MARS, including home loan modification services. (FAC ¶¶ 13–31.) Therefore, they are subject to the MARS regulations.

Plaintiff contends that MARS Defendants committed multiple violations of Regulation O. (*Id.* 58–68.) To request or receive payment of any fee, before the consumer has executed a written agreement with their dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief that the provider obtained, is a violation of Regulation O. 12 C.F.R. § 1015.5(a). Representing that a consumer cannot or should not contact or communicate with his or her lender or servicer is also a violation. 12 C.F.R. § 1015.3(a). Furthermore, it is a violation to misrepresent, expressly or by implication, material aspects of one's services. 12 C.F.R. § 1015.3(b)(1)–(4), (6), (8). Finally, one violates MARS Regulation O if they inadequately disclose that 1) one's services are not associated with the government; 2) one's lender may not agree to change the loan; 3) one may choose not to pay for services if they decline the mortgage assistance from their lender; and 4) if one stops paying their lender they could lose their home and damage their credit. 12 C.F.R. § 1015.4(a)(1)–(2), (b)(1)–(3), (c).

Here, Plaintiff alleges consumers paid MARS Defendants advances of $500 to $5,000 prior to the consumer executing a written agreement with the lender or servicer that incorporated an offer for loan modification. (FAC ¶¶ 27, 65.) Plaintiff contends that MARS Defendants have represented, either expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer. (*Id.* ¶¶ 24, 66.) Furthermore, Plaintiff asserts that MARS Defendants materially misrepresented consumers' likelihood of obtaining a mortgage modification that would make their payments substantially more affordable, the amount of time it would take to accomplish any represented service or result, consumers' obligation to make payments, and the ability to receive legal representation. (*Id.* ¶¶ 21–24, 67.) Moreover, Plaintiff claims that MARS Defendants did not disclose to consumers that 1) they were not associated with the government; 2) that lenders may not agree to change the loan; 3) they may choose not to pay for their services if they declined the mortgage assistance offered; and 4) they could lose their home and damage their

1  credit if they stopped paying their lender.  (*Id.* ¶¶ 20–21, 68.)  Because Plaintiff's
2  allegations are taken as true on default, the Court finds that Plaintiff made out a prima
3  facie case for violation of MARS Regulation O.

####    c.    Telemarketing Sales Rule Violations Claims

5  Congress directed the FTC to prescribe rules prohibiting abusive and deceptive
6  telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101,
7  *et seq*.  A "telemarketer" is any person who, in connection with telemarketing,
8  initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. §
9  310.2(cc).  A "seller" is any person who, in connection with a telemarketing
10 transaction, provides, offers to provide, or arranges for others to provide goods or
11 services to a customer in exchange for consideration.  16 C.F.R. § 310.2(aa).  A "debt
12 relief service" refers to any program or service represented, directly or by implication,
13 to renegotiate, settle, or in any way alter the terms of payment or other terms of the
14 debt between a person and one or more unsecured creditors or debt collectors.  16
15 C.F.R. § 310.2(m).  Here, Student Debt Relief Defendants made initial outbound calls
16 to potential customers.  (FAC ¶ 40.)  Further, Student Debt Relief Defendants offered
17 to provide alterations to the payment of debt between customers and creditors in
18 exchange for a fee.  (*Id.* ¶¶ 37–49.)  Therefore, the FTC rules prohibiting certain
19 telemarketing rules apply to Student Debt Relief Defendants.

20 Plaintiff contends that Student Debt Relief Defendants committed multiple
21 violations of the Telemarketing Sales Rule Act ("TSR").  (*Id.* ¶¶ 69–83.)  The TSR
22 prohibits any seller or telemarketer from requesting or receiving payment of any fees
23 or consideration for any debt relief service unless a) they have renegotiated, settled,
24 reduced, or otherwise altered the terms of at least one debt pursuant to a settlement
25 agreement, debt management plan, or other such valid contractual agreement executed
26 by the customer and b) the customer has made at least one payment pursuant to that
27 agreement.  16 C.F.R. § 310.4(a)(5)(i).  The TSR also prohibits misrepresentation of
28 debt relief services including sellers' affiliation with the government and any material

aspect of any debt relief services. C.F.R. § 310.3(a)(2)(vii), (x). Finally, under the TSR, sellers and telemarketers are prohibited from failing to disclose truthfully that the use of the debt relief service may increase the amount of money the customer owes due to the accrual of fees and interest. 16 C.F.R. § 310.3(a)(1)(viii)(C).

Here, Plaintiff contends that Student Debt Relief Defendants required payment of a fee typically ranging from $500 to $800, prior to consumers executing a written agreement with their lender or servicer that incorporates an offer for student loan debt relief. (FAC ¶¶ 45, 78.) Plaintiff asserts that Student Debt Relief Defendants misrepresented their affiliation with the government by claiming a false association with the United States Department of Education. (*Id.* ¶ 44.) Furthermore, Plaintiff alleges that Student Debt Relief Defendants made material misrepresentations when they represented to consumers 1) that they would renegotiate, settle, or alter the terms of payment of consumers' student loan debts to secure a specified lower payment; 2) that the promised debt relief is guaranteed and if they are unable to secure the promised debt relief they will fully refund consumers' fees; and 3) that consumers would not be responsible for the interest that accrues during forbearance. (*Id.* ¶¶ 42–43, 47.) On many occasions, consumers have not received the promised relief and upon contacting their lender discovered that Student Debt Relief Defendants never made contact. (*Id.* ¶ 48.) Subsequently, many consumers have been unable to receive their refund. (*Id.* ¶ 49.) Moreover, many consumers have accrued thousands of dollars in unpaid interest during forbearance based on the misrepresentations. (*Id.* ¶ 47.) Lastly, Plaintiff asserts that Student Debt Relief Defendants failed to disclose to customers that debt relief service may increase the amount of money the customer owes due to fees and interests. (*Id.* ¶¶ 47, 49, 83.) Plaintiff has alleged sufficient facts to support a Telemarketing Sales Rule Act claim.

### iii. The Amount at Stake Weighs in Favor of Default Judgment

The fourth factor balances the sum of money at stake "in relation to the seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No.

C 11–0961–CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Judgment by default is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Plaintiff seeks $2,329,456 as well as disgorgement of frozen funds from Relief Defendant. (Mot. 6.) $2,329,456 represents the net sales revenue (revenues less chargebacks and refunds) from Defaulting Defendants' debt relief operations. (Van Wazer Decl. ¶¶ 6–11, ECF No. 7-1; Setala Decl. ¶ 4, ECF No. 45-2.) The Court received bank statements that demonstrate Defendants and Relief Defendant commingled funds and otherwise operated as a common enterprise. (Exs. A–B, ECF No. 32-1.) Therefore, the requested relief is directly proportional to the seriousness of Defendants' conduct because it represents value of the consumer injury they caused. This factor favors entering a default judgment.

### iv. There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. Upon entry of default, all well-pleaded facts in the complaint are taken as true. *PepsiCo*, 238 F. Supp. 2d at 1177. As discussed above, Plaintiff has adequately stated claims for violations of the FTC, MARS, and TSR Acts in its FAC. Defendants did not appear and thus the Court takes these allegations as true. This factor, therefore, favors the entry of default judgment against Defendants.

### v. There is Little Possibility Default was Due to Excusable Neglect

Defendants' default does not appear to be a result of excusable neglect. Where there is little possibility of excusable neglect, default judgment is favored when the defendant fails to respond after being properly served. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (default judgment is

favored when defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit). Defaulting Defendants were properly served with the FAC by e-mail on March 8, 2016. (ECF No. 34.) Defendants authorized service by e-mail on February, 24, 2016. (Ex. A, ECF No. 39-1.) Further, entry of default judgment is appropriate when a corporation fails to retain counsel. *See High Country Broad Co., Inc.*, 3 F.3d 1244, 1245 (9th. Cir. 2013). Here, Defendants failed to respond or appear before this Court and did not obtain counsel. Accordingly, the sixth *Eitel* factor favors default judgment.

### vi. Policy of Deciding Cases on the Merits

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where, as in the case at bar, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.") Because Defendant failed to respond to Plaintiff's complaint, the Court finds the seventh and final *Eitel* factor does not preclude default judgment. Accordingly, the Court finds default judgment proper in the instant matter.

## C. Relief Sought

After determining liability, the Court must determine the relief to which the Plaintiff is entitled. *Wecosign*, 845 F. Supp. 2d at 1078. While for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

### i. Monetary Relief Equal to Revenues Less Chargebacks

Plaintiff seeks monetary relief of $2,329,456, which is the net sales revenue (revenues less chargebacks and refunds) of Defendants' debt relief operations. (Mot. 6.) When consumers suffer economic injury from a violation of the FTC Act, equity supports granting monetary relief equal to the resulting injury. *See Fed. Trade Comm.*

*v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (affirming summary judgment award equal to the full amount of loss incurred by consumers); *Fed. Trade Comm. v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1011 (N.D. Cal. 2010) ("[because the] FTC Act was designed to protect consumers from economic injuries . . . courts have often awarded restitution in the full amount of funds lost by consumers rather than limiting restitution solely to a defendant's profits."). The correct measure of the monetary award is "the amount of money paid by consumers, less any refunds made." *Fed. Trade Comm. v. Commerce Planet, Inc.*, F. Supp. 2d 1048, 1088 (C.D. Cal. 2012). So long as the FTC reasonably approximates the amount of consumer harm, that damage figure should stand unless a defendant can show it is not reasonable. *Sec. Exch. Comm. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (the risk of uncertainty of a monetary judgment should fall on the wrongdoer whose illegal conduct created that uncertainty).

Here, FTC's forensic accountant, Tom Van Wazer, analyzed the bank records provided by Defaulting Defendants' financial institutions and calculated the amount of revenues, less chargebacks, that Defendants received from August 2013 through March 2015 as $1,031,274. (Van Wazer Decl. ¶ 8.) FTC paralegal Eric Setala also analyzed bank records and calculated the revenues, less chargebacks, that Defendants received from April 2015 through February 2016 as $1,298,182. (Ex. A., ECF No. 45-2.) Therefore, an award of $2,329,456 is appropriate because this is the total paid by consumers less any refunds made, and because Defendants made no showing that this amount is unreasonable.

### ii. Disgorgement of Funds in Relief Defendant's Accounts

Plaintiff also seeks disgorgement of all funds in Relief Defendant's accounts. (Mot. 9.) Federal courts may order equitable relief as to a person against whom no wrongdoing is alleged in an enforcement action "if it is established that the relief defendant possesses property or profits illegally obtained and the relief defendant has no legitimate claim to them." *Fed. Trade Comm. v. Think Achievement Corp.*, 144 F.

Supp. 2d 1013, 1020 (N.D. Ind. 2000) (citing *Sec. Exch. Comm. v. Cherif*, 933 F.2d 403, 414 & n.11 (7th Cir. 1991). "The ill-gotten gains must be linked to the unlawful practices of the liable defendants." *Fed. Trade Comm. v. Bronson Partners, LLC*, 674 F. Supp. 2d 373, 392 (D. Conn. 2009), aff'd, 654 F.3d 359 (2d Cir. 2011). Direct tracing is unnecessary where, for example, there is a common enterprise or commingling of funds. *See Fed. Trade Comm. v. Network Serv.'s Depot, Inc.*, 617 F.3d 1127, 1142 (9th Cir. 2010). A party lacks a legitimate claim to illegally obtained assets where he or she does not provide consideration for those funds. *Sec. Exch. Comm. v. Vassallo*, No. CIV-S-09- 0665 LKK/DAD, 2012 WL 1868559, at *3 (E.D. Cal. 2012). Thus "the receipt of property as a gift, without the payment of any consideration, does not create a 'legitimate claim' sufficient to immunize the property from disgorgement." *Commod. Futures Trading Comm. v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010).

On February 19, 2016, Defendant SDP transferred $20,000 from its bank to the bank account of Relief Defendant. (Prelim. Report of Temp. Receiver 3–4, ECF No. 24.) The temporary receiver concluded that Defendants and Relief Defendant appeared to operate as a common enterprise. *Id.* Furthermore, in between December 2015 and January 2016, Relief Defendant processed $11,600 in consumer payments through its merchant account into one of Defendant SDP's accounts. (Ex. A, ECF No. 32-1.) During this same period, Relief Defendant issued payroll checks to Defendant Kamal West totaling $32,483, when there was only $17,835 in Relief Defendant's account to make such a payment. (Ex. B, ECF No. 32-2.) Because the funds were illegally obtained and there was no consideration provided, and because there is evidence of a common enterprise, disgorgement of all funds in Relief Defendant's accounts is appropriate.

### iii. Injunctive Relief

Plaintiff also seeks injunctive relief that 1) bans Defendants from selling unsecured or secured debt relief products or services; 2) enjoins Defendants from

making material misrepresentations in connection with the sale of financial products or services, other than secured or unsecured debt relief products or services, including certain misrepresentations specific to financial products or services; 3) prohibits material misrepresentations in connection with the sale of any products or service; and 4) enjoins Defendants from making claims in connection with the sale of any products or services without possessing competent and reliable substantiation. (Mot. 11.) Section 13(b) of the FTC Act provides that "after proper proof, the court may issue, a permanent injunction." *Fed. Trade Comm. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) (FTC Act provides courts with broad authority to grant any ancillary relief necessary to accomplish complete justice). A permanent injunction is appropriate where there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). To determine the appropriate scope of an injunction, courts analyze: "(1) the seriousness and deliberateness of the violation; (2) the ease with which the violative claims may be transferred to other products [or services]; and (3) whether the [defendant] has a history of prior violations." *Fed. Trade Comm. v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014).

Here, the injunctive relief is appropriate given the seriousness of the FTC Act violations, the scope of consumer injury, and the transferability of the false claims at issue to other products and services. The ban on Defendants selling debt relief products or services is appropriate because they have demonstrated an inability to engage in the debt relief business lawfully and only a permanent ban will assure they will not similarly be able to take advantage of consumers in the future. Courts in the Ninth Circuit have approved similar categorical bans as proper injunctive relief. *See, e.g.*, *Fed. Trade Comm. v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1014–15 (C.D. Cal. 2012) (infomercial marketing and telemarketing ban); *Inc21.com*, 745 F. Supp. 2d at 1010 (ban on telephonic billing); *Fed. Trade Comm. v. Medicor, LLC*, F. Supp. 2d 1048, 1050–51 (C.D. Cal. Jul. 18, 2002) (telemarketing and work-

at-home medical billing opportunities bans). The other injunctive prohibitions are appropriate because they are reasonably related to Defaulting Defendants' illegal practices and have sufficient breadth to provide fencing-in relief to ensure they will not transfer their business tactics to other products or services. *Fed. Trade Comm. v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) (violations of the FTC Act justify fencing-in relief); *Litton Indus. v. Fed. Trade Comm.*, 676 F.2d 364, 370 (9th Cir. 1982); *John Beck*, 888 F. Supp. 2d at 1011. Because Defendants' violations were particularly severe and because of the transferability of the false claims at issue to other products and services, the proposed injunctions are appropriate.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Application for Default Judgment against Defendants Good Ebusiness (d/b/a AAP Firm, Student Loan Help Direct, and Select Student Loan), Select Student Loan Help, and Select Document Preparation as well as Relief Defendant Beverley Hills Tax Group.

**IT IS SO ORDERED.**

July 12, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**